:stanfield.decision06/03/09.5

FILED 2009 JUN -4 PM 2: 10
US BANKRUPTCY COURT
EASTERN DISTRICT OF WI

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| In Re: | Chapter 13 |
| DANIEL K. STANFIELD and SHARON E. STANFIELD, | Case No. 07-22066-jes |
| Debtors. | |
| DANIEL K. STANFIELD and SHARON E. STANFIELD, | |
| Plaintiffs, | |
| -v- | Adversary No. 08-2166 |
| FIRST MIDWEST BANK, | |
| Defendant. | |

# DECISION

The issue presented is whether First Midwest Bank ("Bank") is the holder of a valid mortgage on the debtors' homestead at 3412 176th Avenue, Kenosha, Wisconsin ("176th Avenue property").

Daniel K. Stanfield and Sharon E. Stanfield[1] filed a petition in bankruptcy under chapter 13 on March 27, 2007.

---

[1] All references in this decision to Daniel Stanfield alone and to Sharon Stanfield alone shall be designated as "Daniel" and "Sharon" respectively. All references to Daniel and Sharon jointly shall be designated as "Stanfields" or "debtors."

On July 7, 2008, the debtors commenced this adversary proceeding against the Bank seeking a determination that the Bank's mortgage is void because Daniel did not sign a mortgage on the 176th Avenue property, which was used as collateral for a business loan. The debtors contend that this violates Wis. Stats. § 706.02.[2] This statute provides, among other things, that both married persons must join in a conveyance, unless the mortgage is a purchase money mortgage. The parties have stipulated that the mortgage involved in this proceeding is not a purchase money mortgage. Wisconsin's marital property law, as contained in Wis. Stats. § 766.31(3), provides that, even if the homestead is titled in only one of the spouse's names (in this case, it was titled only in Sharon's name), each spouse still owns an undivided one-half interest in such marital property.

The Bank has responded that the mortgage it holds is not void because of what it labels as "substitute requirements" set forth in Wis. Stats. § 706.02(2).

---

[2] **706.02 Formal requisites.** **(1)** Transactions under s. 706.001(1) shall not be valid unless evidenced by a conveyance that satisfies all of the following:
    (a) Identifies the parties; and
    (b) Identifies the land; and
    (c) Identifies the interest conveyed, and any material term, condition, reservation, exception or contingency upon which the interest is to arise, continue or be extinguished, limited or encumbered; and
    (d) Is signed by or on behalf of each of the grantors; and
    (e) Is signed by or on behalf of all parties, if a lease or contract to convey; and
    (f) Is signed, or joined in by separate conveyance, by or on behalf of each spouse, if the conveyance alienates any interest of a married person in a homestead under s. 706.01(7) except conveyances between spouses, but on a purchase money mortgage pledging that property as security only the purchaser need sign the mortgage; and
    (g) Is delivered. Except under x. 706.09, a conveyance delivered upon a parol limitation or condition shall be subject thereto only if the issue arises in an action or proceeding commenced within 5 years following the date of such conditional delivery; however, when death or survival of a grantor is made such a limiting or conditioning circumstance, the conveyance shall be subject thereto only if the issue arises in an action or proceeding commenced within such 5-year period and commenced prior to such death.
    **(2)** A conveyance may satisfy any of the foregoing requirements of this action:
    (a) By specific reference, in a writing signed as required, to extrinsic writings in existence when the conveyance is executed; or
    (b) By physical annexation of several writings to one another, with the mutual consent of the parties; or
    (c) By several writings which show expressly on their faces that they refer to the same transaction, and which the parties have mutually acknowledged by conduct or agreement as evidences of the transaction.

The parties have filed a joint stipulation of facts, cross motions for summary judgment, and briefs.

This is a core proceeding under 28 U.S.C. § 157(b)(2)(K), and the court has jurisdiction under 28 U.S.C. § 1334.

Fed. R. Civ. P. 56(c) declares that summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Existence of a factual dispute in itself does not defeat a summary judgment motion if the issues involved in the factual dispute are not material. Anderson v. Liberty Lobby Inc., 477 U.S. 242, 247-248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Cross motions for summary judgment do not require that one of the motions must be granted. Each summary judgment motion must be evaluated independently.

## STATEMENT OF FACTS

Daniel and Sharon were married in 1995 and have lived in the 176th Avenue property since March of 2003. On March 11, 2005, the Bank made a $20,000 loan to Sensational Pool Builders, LLC ("Sensational Pool Builders"), an entity which is owned by ZJT Management Group, Inc. ("ZJT"). ZJT is a corporate entity which, in turn, is owned solely by Daniel and Sharon. All of the loan documents for the $20,000 loan, including the mortgage, were drafted by the Bank and signed on March 11, 2005. These documents consist of the following:

1. $20,000 promissory note signed by Daniel as president of ZJT and by Sharon as secretary/treasurer of ZJT. This note contained the following language: "COLLATERAL. Borrower acknowledges this Note is secured by various collateral including, without limitation a Mortgage dated March 11, 2005 on property commonly known as: 3412 176th Avenue, Kenosha, Wisconsin, 53144." This note was renewed approximately one year later on identical terms, including the collateral clause provision.

2. Commercial Guaranty signed by Sharon individually.

3. Commercial Guaranty signed by Daniel individually.

4. Real estate mortgage on the 176th Avenue property signed solely by Sharon as grantor. The mortgage was neither signed by Daniel nor was he asked to sign.

5. Miscellaneous other documents consisting of an "Agreement to Provide Insurance" and a "Notice of Insurance Requirements," both of which were signed by Sharon only. Also, corporate resolutions were signed by both Sharon and Daniel as officers of ZJT certifying the existence of Sensational Pool Builders and authorizing ZJT to enter into agreements on behalf of Sensational Pool Builders to borrow money and mortgage property owned by Sensational Pool Builders.

## **LAW**

The Bank has acknowledged that Daniel did not sign the mortgage which was used as collateral for the $20,000 loan. It argues, however, that the mortgage is valid by virtue of three alternative "substitute requirements" contained in subsections of Wis. Stats. § 706.02(2) – any of which subsection satisfies the requirements for a valid mortgage. These subsections are as follows:

1. § 706.02(2)(a) (requires reference in a writing to other extrinsic writings which were in existence when the mortgage was signed);

2. § 706.02(2)(b) (requires physical annexation of several writings to one another which contained the mutual consent of the parties); and

3. § 706.02(2)(c) (requires existence of several documents expressly showing on their faces that the parties mutually acknowledged by their conduct or agreement the terms of the mortgage).

In order to validate the mortgage in this case under any of these subsections, a finding of intent by Daniel to mortgage his interest in the 176th Avenue property must be made. The court, however, is unable to make that finding.

Although the original note and the renewed note both refer to the 176th Avenue property as collateral for the business loan to Sensational Pool Builders, they do not declare that Daniel agreed to convey his undivided ½ interest in this property. The notes do not state that Daniel "mortgages and conveys to Lender all of Grantor's right, title, and interest" in the 176th Avenue property, which is the language used in the mortgage signed by Sharon. If that language had been contained in the notes which Daniel signed, that would have satisfied the requirements under the subsections to § 706.02(2) and would have made the mortgage valid. The language which was actually used in the notes, however, falls short of expressing such intent by Daniel to convey his interest in the 176th Avenue property.

The Bank further argues that the Limited Liability Company Resolution of Sensational Pool Builders provides, in part, authority "to mortgage, pledge, transfer, endorse, hypothecate or otherwise encumber and deliver to Lender any property now or hereafter belonging to the company" as showing a clear intent by Daniel to encumber his homestead interest. The court rejects that argument. This provision in the corporate resolution only refers to property owned by Sensational Pool Builders, not by Daniel. The fact that Daniel signed this document does not alter that conclusion because Daniel was signing the resolution in his capacity as president of ZJT, owner of Sensational Pool Builders. He did not sign the document personally.

The Bank also argues that it would be inequitable to invalidate this mortgage.[3] The court also rejects that argument. The Bank is a sophisticated entity. It has an obligation to carefully check the requirements of Wisconsin law before finalizing on the documents which it prepared.

In re Larson, 346 B.R. 486 (Bankr. E.D. Wis. 2006), is relevant. In Larson, Judge McGarity ultimately found in favor of the mortgagee but she did so after first finding that the mortgage itself did not meet the requirements of § 706.02 and was therefore invalid. She stated that, under the facts of the case, Universal Mortgage Corp. made a loan to the debtor after the debtor had identified himself as an unmarried man, when in fact he has married at the time. Judge McGarity then decided that Universal Mortgage Corp., having paid off the mortgage balance due to Wells Fargo, who held a prior and valid mortgage, was entitled to be equitably subordinated to the interest of Wells Fargo. That is not the situation in the case at bar. Neither Sharon, who signed the mortgage, nor Daniel ever represented to the Bank that Sharon was unmarried. Quite to the contrary, all of the documents which Daniel and Sharon signed were signed as "Daniel Stanfield" and "Sharon Stanfield."

In In re Lewis, 398 F.3d 735 (6th Cir. 2005), the court concluded that the lender bank was not entitled to equitable relief because it was a sophisticated creditor with complete control over the signing and recording of the loan documents, including the mortgage, and it was the bank, not the mortgagor, who caused the mortgage to be invalid. The Wisconsin Supreme Court in State Bank of Drummond v. Christophersen, 93 Wis.2d 148, 286 N.W.2d 547, 553 (1980) (quoting Conner v.

---

[3] Although Wis. Stats. § 706.04 does provide for equitable relief under certain circumstances, Glinski v. Sheldon, 88 Wis.2d 509 (1979), held that it does not remedy or override the requirements of both spouses being required to sign a conveyance pertaining to their homestead.

Case 08-02166-jes    Doc 16    Filed 06/04/09    Page 6 of 8

Welch, 51 Wis. 431, 8 N.W. 260 (1981)), in holding a mortgage as wholly void and ineffective, declared the following:

> It is infinitely better that men should be held to the consequences of their own culpable carelessness, than that courts of equity should undertake to relieve therefrom. The rule requires reasonable caution and prudence in the transaction of business, and is deeply embedded in jurisprudence . . . . The abrogation of the rule would tend to encourage negligence and to introduce uncertainty and confusion in all business transactions.

After scrutinizing all of the documents signed by Daniel, this court is persuaded there is no showing of intent by Daniel to mortgage his undivided ½ interest in the 176th Avenue property. The mere acknowledgment by Daniel that the 176th Avenue property was to serve as collateral for the mortgage was insufficient to establish a conveyance by Daniel of his interest in this property as a mortgage for the business loan. Had Daniel been asked to do so, he may well have agreed. It is more likely that what occurred was that the subject was never discussed because the Bank had concluded that the documents which it had prepared were sufficient to establish a valid mortgage. What could have been done and what was done are two different things.

## **CONCLUSION**

The court concludes that the mortgage on the 176th Avenue property held by the Bank as mortgagee is void and that the Bank is the holder of a general unsecured claim in this chapter 13 case.

The court grants the plaintiffs' motion for summary judgment and denies the defendant's motion for summary judgment.

-7-

Case 08-02166-jes    Doc 16    Filed 06/04/09    Page 7 of 8

The foregoing constitutes the court's findings of fact and conclusions of law pursuant to Fed. R. Bank. P. 7052. The court shall enter a separate order.

Dated at Milwaukee, Wisconsin, this 4 day of June, 2009.

BY THE COURT:

JAMES E. SHAPIRO
U. S. BANKRUPTCY JUDGE

c:
Dayten P. Hanson, Esq.
1841 North Prospect Avenue
Milwaukee, WI 53202

Ronald G. Tays, Esq.
812 East State Street
Milwaukee, WI 53202

Mary B. Grossman, Trustee
740 North Plankinton Avenue, Ste. 400
Milwaukee, WI 53203